WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—November, 1883.

## HOOD v. HOOD.

*In the matter of the estate of* ANDREW HOOD, *deceased.*

Letters testamentary issue only out of a Surrogate's court, and the statutes clothe that tribunal alone with the power to revoke the same; and point out the mode of its exercise.

The Supreme court having no power to order the removal of an executor, the pendency, in that court, of an action, wherein such removal constitutes a portion of the relief sought, is no bar to a special proceeding instituted in a Surrogate's court to procure a decree revoking his letters.

Testator having, by his will, directed his executrix and executor to convert the residue of his estate, into money, invest the net proceeds on bond and mortgage on real estate in the State of New York, and apply the interest to the use of certain *cestuis que trust*, the executor, without the knowledge of the executrix, expended nearly one half of such proceeds in the purchase of real property in New Jersey, which was conveyed to him as "F. H., executor," whereby the amount so expended was lost to the estate.—

*Held,* that the facts established clearly brought the case within Code Civ. Pro., § 2685, subd. 2, which specifies, as a cause for revoking an executor's letters, "his having wasted . . . the money . . . in his hands . . . . or otherwise improvidently managed . . . , the property committed to his charge."

AN application was heretofore made by Bertram D. Hood, one of the legatees under the will of Andrew Hood deceased, praying for several distinct forms of relief, among which was embraced that of the revocation

of the letters testamentary issued to Frederick Hood. On objection made, the petitioner was permitted to elect any one which he desired to pursue, and he elected that having in view the revocation of the letters (1 Dem., 392).

It appears that the will, after giving various specific and general legacies, directed the executors, Maria L. Hood and Frederick Hood, to convert all the residue of testator's estate, real and personal, into money, and, after paying the incumbrance on certain real estate, the use of which had been previously devised, to divide the balance into as many shares as he should leave children by his wife, Maria L. Hood, and invest the same on bond and mortgage on real estate in the State of New York, the interest to be applied to the support, maintenance and education of said children, respectively, during minority, and to pay over to each child, on arriving at the age of twenty one years, his or her share, with the accumulation, if any.

By an accounting had before the Surrogate of Westchester county in 1869, it appeared that the actual conversion into a money fund, of the real and personal estate had been effected, and that there remained a balance on hand, to be kept invested as provided by the will, of about $55,000. Of this sum so belonging to the estate, Frederick Hood, in 1875, without the knowledge of the executrix, used $29,100 in the purchase of a house and lot in the city of Newark, in the State of New Jersey, on which there was, at the time of the purchase, an existing mortgage of $25,000, the payment of which was assumed by him. The deed was executed to him as "Frederick Hood, executor." The mortgage

was subsequently foreclosed, and the property sold, in 1880, for a sum insufficient to pay the amount due upon the mortgage. At the time of the foreclosure there was a judgment against Frederick Hood of upwards of $4,000, which was declared to be a lien on the mortgaged premises. These facts tending to show that the executor had wasted or improperly applied the property were, chiefly, set forth in the petition, and were met by a general denial in the answer. They were, however, established on the hearing. The answer also stated, as a bar to this proceeding, that an action was pending in the Supreme court, in Kings county, in which it was sought, among other things, to remove the executor.

Roe & Macklin, *for petitioner.*

E. P. Wilder, *for executor.*

The Surrogate.—The decree prayed for must be granted. The executor has been guilty of a flagrant violation of his duty and the facts established clearly bring the case within subd. 2 of § 2685 of the Code. By violating the plain direction of the will, to invest the funds on bonds and mortgages in the State of New York, he, by purchasing real estate in the State of New Jersey, has caused a loss of more than one half of the large fund on hand for proper investment at the time of the accounting in 1869. As a consequence of this misconduct, those entitled to the fund have thus far been unable to obtain their shares of it; and the widow is suffering for want of the income, provided for her by the will, which is unjustly withheld.

The fact that an action is pending in the Supreme court, in which, among other things, judgment is asked

for the removal of the executor, cannot, I apprehend, affect the jurisdiction of this court in the premises. That action, it appears, was commenced in 1878, and is still pending. Of course, it is impossible to know when it will be determined, and, if the executor's counsel is correct in supposing that to be a bar to this proceeding, then the legatees are left, all these years, without other remedy. It has been repeatedly held, and is well settled, however, that Chancery (the Supreme court) has no power to remove an executor (Redf. Law & Pr. Surr. Courts, *357;* Perry on Trusts [*2nd ed.*], § *281;* Wood *v.* Brown, *34 N. Y., 339;* Quackenboss v. Southwick, *41 id., 117*). The Surrogate issues the letters, and the statute clothes him alone with power to revoke them, and points out the mode of its exercise. It is a duty imposed upon me, the performance of which I cannot escape, if I would.

It is by no means an uncommon thing for executors, and others acting in a fiduciary capacity, to be led into wild speculations, in the hope of gain, in manifest violation of the duties of the trust, and in nine cases out of ten, perhaps, they encounter disaster, to the ruin or injury of the beneficiaries. Here the executor has "wasted" the assets in his hands, to the extent of about $30,000 ; he has "improvidently managed" the property committed to his charge, and his letters should be revoked in order that the destitute widow and her injured children may take such measures of redress, consequent thereupon, as the law permits.

Decree accordingly, with costs.